## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **REGINA COCO LARUE,** | * | |
| **Plaintiff** | * | |
| v. | * | **Civ. No. DLB-25-225** |
| **DIANN CHASE, *et al.*** | * | |
| **Defendants** | * | |

## MEMORANDUM OPINION

Self-represented plaintiff Regina CoCo LaRue alleges that Laronda Dison Terry ("L. Terry"), Diann Chase, Tonisha Porter, Montrell Dison, Merrick Dison, Antonio Terry ("A. Terry"), Claudia Jordan, Tiasheca Ashonda Talley, Marguerite Braithwaite, and Kumar Gangaiah coordinated through online platforms to harass and defame her by posting defamatory posts and instructions for hacking into LaRue's accounts and hosting livestream events to harm her. She asserts a bevy of state law claims—civil conspiracy, intentional infliction of emotional distress, defamation, tortious interference with business relations, invasion of privacy, negligence, and fraud—against some or all of them.

Several defendants—Chase, Porter, Talley, L. Terry, Merrick Dison, and Montrell Dison—move to dismiss for lack of personal jurisdiction or, alternatively, for failure to state a claim. Jordan and Braithwaite move to dismiss for failure to state a claim. Jordan, Braithwaite, L. Terry, and Chase have filed counterclaims, which LaRue moves to dismiss. LaRue also filed a motion for a temporary restraining order ("TRO") and/or preliminary injunction. For the following reasons, the Court dismisses the claims against Chase, Porter, Talley, Merrick Dison, and Montrell Dison for lack of personal jurisdiction. The claims against L. Terry, Jordan, and Braithwaite are dismissed for failure to state a claim. The claims against A. Terry and Gangaiah are dismissed *sua sponte* for

failure to state a claim. L. Terry's and Chase's counterclaims are dismissed in part. LaRue's motion for a TRO and/or preliminary injunction is denied. LaRue must respond to the counterclaims that survive her motion to dismiss.

## I.    Background

LaRue, a Maryland resident, is the "founder of CoCo LaRue Beauty Brand and Speechless Interior Design, serving the D.C. metro and Dallas markets," and she "has worked as a stylist and makeup artist on film, theater, and editorial productions" for over a decade. ECF 77, ¶¶ 15–16. In her second amended complaint, LaRue alleges that the defendants "formed a coordinated network" and "used private group chats, text messages, email chains, and livestreams to plan and execute a campaign of harassment and defamation against [her]." *Id.* ¶¶ 17–18.

LaRue alleges that "several Defendants reposted a livestream repeating false allegations that [she] is an un-professional business owner who owes individuals money including Defendant Antonio Terry," and that the defendants "told individuals in the entertainment industry that a federal report was filed on [her] and it is [LaRue] who is under federal fraud investigations and engaged in occult practices against them." *Id.* ¶ 21. LaRue also alleges that the defendants "filed a slanderous report to The Federal Bureau of Investigation to get [her] investigated." *Id.* ¶ 44. LaRue further alleges Braithwaite and Gangaiah "contacted suppliers and falsely claimed [she] was under criminal investigation," which caused "a major vendor" to "suspend[] $150,000 in pending orders." *Id.* ¶ 24. She alleges that unidentified "[h]ackers deleted client messages and leaked private design files" from her Gmail and Instagram accounts. *Id.* ¶ 25.

LaRue also alleges threats. She claims that "[o]n October 8, 2024, a severed animal carcass was left at [her] house and neighbors describe a person that fits Laronda 'Ronnie' Dison Terry['s] description." *Id.* ¶ 26. And she claims that "[o]n December 2, 2024, Defendant Gangaiah texted

[her] a doctored photo of her grandson with a simulated bullet wound" with the "warn[ing], 'Next time I won't need Photoshop.'" *Id.* ¶ 27.

In addition, LaRue alleges that the defendants monitored and recorded her. She claims that "her home was unlawfully entered" and that "surveillance devices may have been planted without her consent, and that private medical and financial information was accessed or shared without authorization." *Id.* ¶ 47. LaRue alleges that "Defendants or persons acting on their behalf placed unauthorized video recording devices in the vents of [her] private residence, including in her bedroom and bathroom, for the purpose of secretly observing and recording her without her knowledge or permission" and that "[t]his footage was sold and viewed by thousands on OnlyFans platform." *Id.* ¶ 94. She adds that they "allegedly hacked into [her] email accounts, mobile devices, and social media profiles, accessing private messages, images, contacts, and personal information without authorization." *Id.* ¶ 96. And, she alleges that the defendants "obtained a life insurance policy in her name without her knowledge" and then "engaged in continuous surveillance of [her] physical location and activities and used third parties to track or monitor her movements in person and online." *Id.* ¶¶ 97–98.

LaRue sues all the defendants for civil conspiracy, intentional infliction of emotional distress ("IIED"), defamation, tortious interference with business relations, invasion of privacy, and negligence, and she sues L. Terry, Chase, and Braithwaite for fraud. ECF 77, ¶¶ 34–126.

In March, 2025, eight of the ten defendants moved to dismiss LaRue's amended complaint for lack of personal jurisdiction or failure to state a claim, ECF 15, 18, 22, 25, 31, 35, 45. The Court found that LaRue had failed to establish that the Court has personal jurisdiction over Talley, Chase, Porter, L. Terry, Montrell Dison, or Merrick Dison and granted their motions. ECF 49, at 4; ECF 50. The Court also granted the defendants' motions to dismiss for failure to state a claim

because LaRue's factual allegations and claims in the amended complaint were unclear and the amended complaint greatly exceeded the 40-page limit. ECF 49, at 5; ECF 50. The Court granted LaRue leave to file a second amended complaint that did not exceed 40 pages and that corrected the deficiencies noted. ECF 49, at 5; ECF 50.

LaRue filed her second amended complaint, which the same eight defendants now move to dismiss. Chase and Porter (Arkansas residents) and Talley, L. Terry, Merrick Dison, and Montrell Dison (Georgia residents) move to dismiss for lack of personal jurisdiction or, alternatively, for failure to state a claim. ECF 79, 82, 85, 88, 91, 95. LaRue opposed their motions. ECF 103, 104, 107, 110, 106, 109. Talley, L. Terry, Chase, and Porter filed replies. ECF 121, 122, 123, 124. Jordan and Braithwaite move to dismiss for failure to state a claim. ECF 108. LaRue did not file an opposition. Jordan, Braithwaite, L. Terry, and Chase have filed counterclaims, ECF 72–75, and LaRue moves to dismiss them, ECF 97, 98, 99, 101. The counterclaimants opposed her motions. ECF 111, 112, 118, 119. LaRue filed replies to Chase and L. Terry's oppositions. ECF 115, 116, 117. LaRue also filed a verified motion for a TRO and/or preliminary injunction. ECF 120.[1] The defendants did not respond.

## II.    Motions to Dismiss LaRue's Claims for Lack of Personal Jurisdiction

A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction challenges the propriety of a particular court's exercise of power over a particular defendant. *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020). The inquiry for a Rule 12(b)(2) motion is similar to the inquiry for a Rule 12(b)(6) motion: "[T]he district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal

---

[1] Jordan and Braithwaite also filed a motion for extension of time to respond to the second amended complaint. ECF 105. LaRue opposed the motion. ECF 114. The motion is granted.

jurisdiction over the party challenging jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). But there is one significant difference: "[A] court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (citing *Grayson v. Anderson*, 816 F.3d 262, 269 (4th Cir. 2016)). Throughout, the court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). Nevertheless, "[w]hen personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins*, 935 F.3d at 226. "[F]iling a counterclaim, compulsory or permissive, cannot waive a party's objections to personal jurisdiction," provided the jurisdictional challenge is raised in the answer or a Rule 12(b)(2) motion. *Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1308 (Fed. Cir. 2005) (noting that Third, Fifth, Ninth, and D.C. Circuits adopted this approach in *Neifeld v. Steinberg*, 438 F.2d 423, 428–29 (3d Cir. 1971); *Bayou Steel Corp. v. M/V Amstelvoorn*, 809 F.2d 1147, 1149 (5th Cir. 1987); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330 (9th Cir. 1984); and *Chase v. Pan–Pac. Broad., Inc.*, 750 F.2d 131, 132 (D.C. Cir. 1984)).

A federal district court may have either general or specific jurisdiction over a nonresident defendant. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). A court has general jurisdiction over a defendant if the defendant's conduct in the state is not the basis for the suit, *see id.*, and the defendant's connections to the state are "so constant and pervasive as to render it essentially at home in the forum State," *Fidrych*, 952 F.3d at 132 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). By contrast, a court has specific

jurisdiction over a nonresident defendant if "the defendant has purposefully availed itself of the privilege of conducting activities in the state," "the plaintiff['s] claims arise out of those activities directed at the state," and "the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397.

La Rue does not allege "constant and pervasive" connections to the state to establish general jurisdiction. *See Fidrych*, 952 F.3d at 132. LaRue, then, must establish that this Court has specific jurisdiction over the defendants. In her second amended complaint, LaRue alleges that "[t]his Court has personal jurisdiction over each Defendant pursuant to Maryland's long-arm statute, and the exercise of personal jurisdiction complies with the Due Process Clause of the Fourteenth Amendment, as Defendants have purposefully directed actions toward the State of Maryland and [her], causing harm within this District." ECF 77, ¶ 3.

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *See* Fed. R. Civ. P. 4(k)(1)(A); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). Specific jurisdiction exists if, but only if, "(1) the exercise of jurisdiction [is] authorized under the state's long-arm statute; and (2) the exercise of jurisdiction . . . comport[s] with the due process requirements of the Fourteenth Amendment." *Carefirst*, 334 F.3d at 396.

Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103(b), reaches as far as the Due Process Clause permits. *See Carefirst*, 334 F.3d at 396 (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977)). Even so, courts cannot combine their analyses of the long-arm statute and the Due Process Clause. *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006). Rather, they first must apply the long-arm statute to the facts to determine whether the "defendant's activities are covered by the statutory language." *Dring v. Sullivan*, 423 F. Supp. 2d 540, 545 (D. Md. 2006) (quoting *Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F.

Supp. 116, 118 n.2 (D. Md. 1995)). After an analysis of the long-arm statute, courts then analyze whether the exercise of personal jurisdiction over a nonresident defendant accords with due process. *See Carefirst*, 334 F.3d at 397.

Maryland's long-arm statute limits specific jurisdiction to cases where the cause of action "aris[es] from any act enumerated in the statute itself." Cts. & Jud. Proc. § 6-103(a). The statute authorizes jurisdiction over a party who, directly or by an agent, acts in one of six ways:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>
> (5) Has an interest in, uses, or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

*Id.* § 6-103(b).

LaRue does not allege that the defendants transact business, work, or provide services in Maryland or that they have contracted to supply any goods or services in Maryland. *See id.* § 6-103(b)(1), (2). LaRue also does not allege that any defendant "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State," which is a prerequisite to satisfy § 6-103(b)(4). Nor does she allege that any defendant has or uses real property in Maryland or insures or acts as a surety for anyone or anything in Maryland. *See id.* § 6-

103(b)(5), (6). That leaves § 6-103(b)(3)—causing tortious injury in the state by an act or omission in the state—as the only possible applicable subsection.

The tortious injury that LaRue claims establishes personal jurisdiction over the defendants in Maryland is a "coordinated campaign of harassment, defamation, and intrusion that specifically targeted her in Maryland, where she resides." ECF 103, at 2–3. Specifically, LaRue asserts that the defendants "publish[ed] and disseminat[ed] false and defamatory statements about [her] on social media platforms accessible in Maryland," "knowingly direct[ed] threats, phone calls, and harassing communications to her Maryland address and phone," "conspir[ed] to invade her privacy by unlawfully accessing her personal information and surveilling her movements within Maryland," and "work[ed] in concert to cause reputational, psychological, and physical harm to her within this forum." *Id.* at 3.[2]

In LaRue's view, this Court has personal jurisdiction over all the moving defendants because they were engaged in a coordinated campaign or conspiracy to harass and defame her in Maryland and to intrude into her home in Maryland. LaRue's argument has some support in the law. In certain, limited circumstances, one nonresident defendant's actions in Maryland can establish personal jurisdiction over other nonresident defendants under "an agency-based 'conspiracy theory of jurisdiction.'" *Dominion Fin. Servs., LLC v. Pavlovsky*, 673 F. Supp. 3d 727, 743 (D. Md. 2023) (quoting *Mackey*, 892 A.2d at 486). To establish personal jurisdiction over nonresident defendants with "no direct contacts with the forum" based on "overt acts in furtherance of [a] conspiracy" and "attributable to . . . co-conspirators," the plaintiff must show that

> (1) two or more individuals conspire[d] to do something (2) that they could reasonably expect to lead to consequences in a particular forum, . . . and [3] those

---

[2] LaRue filed separate oppositions to each defendant's motion, but they contain the same argument. *See* ECF 104, at 2–3; ECF 106, at 2–3; ECF 107, at 2–3; ECF 109, at 2–3; ECF 110, at 2–3.

acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state . . . .

*Id.* at 743–44 (quoting *Mackey*, 892 A.2d at 486). But, "jurisdiction may be imputed to a co-conspirator 'only if [he] reasonably expects *at the time [he] agreed to participate in the conspiracy* that such acts will be done and that such acts will subject the co-conspirator who performs them to the personal jurisdiction of the forum state.'" *Id.* (quoting *Mackey*, 892 A.2d at 489) (emphasis in *Mackey*). If these circumstances are present, then "'one co-conspirator is acting as the agent of the others,' and the other co-conspirators are thus liable for any acts 'done by an agent within the meaning of § 6-103(b) of the Maryland long-arm statute.'" *Id.* (quoting *Mackey*, 892 A.2d at 486). As discussed below, LaRue has not sufficiently alleged that the defendants conspired to do anything. And LaRue certainly has not alleged that the defendants conspired to do something with the expectation that their conduct would subject them to Maryland's personal jurisdiction. Thus, LaRue has not established personal jurisdiction over the defendants under "an agency-based 'conspiracy theory of jurisdiction.'" *See id.* (quoting *Mackey*, 892 A.2d at 486).

Turning to LaRue's allegations against each moving defendant, the Court considers whether she has established personal jurisdiction over each of them based on their own conduct.

LaRue generally alleges that the nonresident defendants published and disseminated false and defamatory statements about her on social media platforms that were accessible in Maryland. These allegations are insufficient, on their own, to satisfy § 6-103(b)(3). Section 6-103(b)(3) requires "a tortious injury in Maryland" and "an act or omission in Maryland" that caused the injury. *Hart v. Carver*, No. JRR-23-3499, 2024 WL 4025837, at *4 (D. Md. Sept. 3, 2024) (quoting *Craig v. Gen. Fin. Corp.*, 504 F. Supp. 1033, 1036 (D. Md. 1980)). Thus, "both the tortious injury and the tortious act must have occurred in Maryland." *Id.* (quoting *Dring*, 423 F. Supp. 2d at 546); *see also Zinz v. Evans & Mitchell Indus.*, 324 A.2d 140, 144 (Md. Ct. Spec. App. 1974) ("The

causal act is separated from the resulting injury. Both elements must be present before personal jurisdiction will be inferred."). And, when the alleged tortious act is defamation, "the 'act' which gives rise to a cause of action . . . occurs where the defamation originated—not where any such statement happened to be read." *Hart*, 2024 WL 4025837, at *4 (quoting *Harvey v. Cable News Network, Inc.*, 520 F. Supp. 3d 693, 709–710 (D. Md. 2021)); *see also Baumgarten v. Belsky*, No. GJH-19-374, 2020 WL 3447753, at *3 (D. Md. June 24, 2020) (no personal jurisdiction under § 6-103(b)(3) where plaintiff alleged that "Defendant's false statements in the Facebook Group [that had Maryland members] caused Plaintiff tortious injury in Maryland" but did not allege that "Defendant's 'harmful speech originated in Maryland'" (quoting *Winter v. Pinkins*, No. JKB-14-2125, 2014 WL 5500393, at *3 (D. Md. Oct. 14, 2014))); *Winter*, 2014 WL 5500393, at *3, *4 (no personal jurisdiction under § 6-103(b)(3) where plaintiff alleged that defendant made "ten harmful web postings" but did "not contend-and the Court ha[d] no basis to suspect-that Defendant traveled into Maryland before posting the allegedly harmful speech").

Next consider LaRue's claim that one of the defendants left an animal carcass at her Maryland home. Specifically, LaRue claims that "[o]n October 8, 2024, a severed animal carcass was left at [her] house and neighbors describe a person that fits Laronda 'Ronnie' Dison Terry['s] description." ECF 77, ¶ 26. This allegation could support a claim for IIED. If the allegation is true, placing an animal carcass in front of a home in Maryland could constitute causing tortious injury in the state under § 6-103(b). LaRue has established personal jurisdiction over L. Terry.

Finally, LaRue claims that "her home was unlawfully entered" and that "surveillance devices may have been planted without her consent, and that private medical and financial information was accessed or shared without authorization." ECF 77, ¶ 47; *see id.* ¶¶ 94–96. These

allegations are too conclusory, speculative, vague, and fanciful to satisfy § 6-103(b) as to any defendant.

The thrust of LaRue's allegations in support of personal jurisdiction in Maryland are that the nonresident defendants engaged in a concerted online campaign to defame and harass her, a Maryland resident, on social media platforms. As stated earlier, merely posting defamatory statements on social media platforms from outside of Maryland with the intent to harm a Maryland resident does not satisfy Maryland's long-arm statute. Even if it somehow did, the exercise of personal jurisdiction under those circumstances would not comport with due process. "'[T]he key issue in a specific jurisdiction case' is the extent to which a defendant has purposefully availed itself of the forum, including by directing conduct at the forum." *Khashoggi v. NSO Grp. Techs. Ltd.*, 138 F.4th 152, 163 (4th Cir. 2025) (quoting *Fidrych*, 952 F.3d at 142–43)). Thus, "[a]lthough the place that the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction . . . is to be upheld." *Id.* at 164 (quoting *Carefirst*, 334 F.3d at 401); *see Young v. New Haven Advoc.*, 315 F.3d 256, 262 (4th Cir. 2002) (same). In the context of online actions that cause harm,

> a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*Young v. New Haven Advoc.*, 315 F.3d 256, 263 (4th Cir. 2002) (quoting *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) (adapting standard from *Calder v. Jones*, 465 U.S. 783 (1984))).

Consider a case from the Western District of Pennsylvania applying the *Calder* effects test to similar facts. In *Rhodes v. Azeff*, the court analyzed whether online conduct was sufficient for

11

the court to exercise personal jurisdiction over the defendant. No. CV 22-101, 2025 WL 327297, at *4 (W.D. Pa. Jan. 29, 2025). There, the defendant allegedly "wrote a 'Defamatory Statement' and self-published a 'Defamatory Manifesto' online and made several Twitter posts." *Id.* (citing am. compl.). The court observed that "[t]he statement, manifesto and Twitter posts [we]re available the same way regardless of the location from which the reader accessed the statements on the internet" and concluded that "[t]he Amended Complaint fail[ed] under the *Calder* effects test because there [we]re no allegations that [the defendant] expressly aimed her conduct at Pennsylvania." *Id.* The court also noted that even if the defendant "knew that her statements would impact [the plaintiff] in Pennsylvania," the pleading did not include allegations that would "support a strong relationship among [the defendant], Pennsylvania and the publishing of her statement, Manifesto and Twitter posts on the internet." *Id.* at *5.

The same reasoning applies here. The allegedly false and defamatory statements of the defendants were available on the Internet in the same way to all readers, regardless of their geographic location. LaRue does not allege that the defamation defendants posted the online statements while they were in Maryland. Nor does she allege that they directed their online activity into Maryland "with the manifested intent of engaging in business or other interactions within" the state. *See Young*, 315 F.3d at 263. Exercising jurisdiction over nonresidents Talley, Chase, Porter, Montrell Dison, and Merrick Dison merely because they posted online defamatory statements about LaRue and because LaRue accessed them on the Internet in Maryland does not comport with due process.

Talley's, Chase's, Porter's, Montrell Dison's, and Merrick Dison's motions are granted, and the claims against them are dismissed without prejudice for lack of personal jurisdiction.

LaRue has established personal jurisdiction over L. Terry. The Court will consider whether LaRue has stated a claim against her.

### III.     Motions to Dismiss LaRue's Complaint for Failure to State a Claim

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista,*

*Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe *pro se* pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a *pro se* complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

LaRue sues L. Terry, Jordan, and Braithwaite for civil conspiracy, IIED, defamation, tortious interference with business relations, invasion of privacy, and negligence, and she also sues L. Terry and Braithwaite for fraud. They argue that LaRue fails to state a claim against them. In analyzing the sufficiency of the allegations in LaRue's second amended complaint, the Court is mindful that the Court previously dismissed her first amended complaint for failure to state a claim (on the defendants' motion) and that LaRue was supposed to file a second amended complaint that cured the pleading defects the defendants identified.

The Court first must determine which state's law applies to each of LaRue's claims. When jurisdiction is based on diversity of citizenship, as here, the court "appl[ies] the forum state's choice-of-law rules to determine the governing substantive law." *Towers Watson & Co. v. Nat.*

*Union Fire Ins. Co.*, 67 F.4th 648, 653 (4th Cir. 2023). Maryland is the forum state. "For tort claims, Maryland adheres to the First Restatement of Conflict of Laws rule, *lex loci delicti commissi,* or the law of the place of the harm, to determine the applicable substantive law." *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) (citing *Naughton v. Bankier*, 691 A.2d 712, 716 (Md. Ct. Spec. App. 1997). In her IIED, fraud, civil conspiracy, tortious interference with business relations, invasion of privacy, and negligence claims, LaRue alleges that she was harmed in Maryland, where she lives. Maryland law applies to those claims.

As for the defamation claim, historically, "the place of the harm has . . . been considered to be the place where the defamatory statement was published, i.e., seen or heard by non-parties." *Wells*, 186 F.3d at 521–22. But "when 'the defamatory statements are published in multiple states,' courts consider 'the state of plaintiff's domicile, the state of plaintiff's principal activity to which the alleged defamation relates, and the state where plaintiff suffered the greatest amount of harm.'" *Daniel v. Home Box Off., Inc.*, No. ELH-23-233, 2023 WL 8478867, at *9 (D. Md. Dec. 7, 2023) (quoting *Driver Opportunity Partners I, LP v. First United Corp.*, RDB-20-2575, 2021 WL 82864, at *8 (D. Md. Jan. 8, 2021)). "[G]enerally speaking, the plaintiff's state of residence bears the most significant relationship to the incident and parties because that is where the plaintiff's reputation suffers the most." *Id.* (quoting *Alston v. Ross*, PX-21-0141, 2021 WL 2895835, at *3 (D. Md. July 9, 2021)). LaRue is domiciled in Maryland, her businesses are in Dallas, Texas, and the "D.C. metro" area, and it appears that she allegedly suffered the most harm in Maryland. The Court applies Maryland law to LaRue's defamation claims.

The Court begins with the IIED claim. To state a claim for IIED under Maryland law, a plaintiff must plead that the defendant engaged in conduct that was both "intentional or reckless" and "extreme and outrageous," that there is "a causal connection between the wrongful conduct

and the emotional distress," and that the emotional distress was "severe." *Lasater v. Guttmann*, 5 A.3d 79, 89 (Md. Ct. Spec. App. 2010) (quoting *Harris v. Jones*, 380 A.2d 611 (Md. 1977)). Stated slightly differently, a plaintiff must allege the defendant "desire[d] to inflict severe emotional distress" and knew that "such distress [was] certain, or substantially certain, to result from [its] conduct" or "the defendant act[ed] recklessly in deliberate disregard of a high degree of probability that the emotional distress [would] follow." *Haines v. Vogel*, 249 A.3d 151, 163 (Md. Ct. Spec. App. 2021) (quoting *Harris*, 380 A.2d at 614). To satisfy the "extreme and outrageous" requirement, the conduct "must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Batson v. Shiflett*, 602 A.2d 1191, 1216 (Md. 1992)). Liability for this tort "should be imposed sparingly and 'its balm reserved for those wounds that are truly severe and incapable of healing themselves.'" *Id.* (quoting *Figueiredo-Torres v. Nickel*, 584 A.2d 69, 75 (Md. 1991), and noting, as of 2021, "[a] claim for IIED has been sustained in Maryland four times"). Courts have found cognizable IIED claims when an a "psychologist engaged in sexual relations with plaintiff's wife during the time he was counseling the couple"; a "physician with herpes had sex with nurse without informing her that he had the disease and infected her"; and a "workers' compensation insurer insisted that claimant submit to psychiatric evaluation for the 'sole purpose' of harassing her and forcing her to drop her claim or commit suicide." *Id.* at 163–64.

LaRue alleges a wide array of conduct that she believes amounts to intentional infliction of emotional distress. She alleges that L. Terry, Jordan, Braithwaite, and the other defendants "formed a coordinated network" and "used private group chats, text messages, email chains, and livestreams to plan and execute a campaign of harassment and defamation against [her]" by "shar[ing] instructions and templates for hacking [her] accounts, draft[ing] defamatory posts,

schedul[ing] joint livestream events and payments to harm [her]." ECF 77, ¶¶ 17–19. LaRue alleges that "Defendants (ALL) told individuals in the entertainment industry that a federal report was filed on [her] and it is [she] who is under federal fraud investigations and engaged in occult practices against them." *Id.* ¶ 21. LaRue claims that Braithwaite, in particular, "with professional credentials, contacted suppliers and falsely claimed [LaRue] was under criminal investigation," causing "a major vendor [to] suspend[] $150,000 in pending orders." *Id.* ¶ 24. She further alleges that the defendants "filed a slanderous report to The Federal Bureau of Investigation to get [her] investigated." *Id.* ¶ 44. And, she claims "her home was unlawfully entered" and that "surveillance devices may have been planted without her consent, and that private medical and financial information was accessed or shared without authorization. *Id.* ¶ 47. LaRue alleges that, as a result of this tortious conduct, "[s]he experienced anxiety, depression, sleep disturbances, and physical symptoms" that have affected her day-to-day life, and she "was forced to seek ongoing medical treatment and psychological counseling." *Id.* ¶¶ 50–52.

This alleged conduct is not sufficiently extreme and outrageous to state an IIED claim. The allegations that the defendants entered her home, installed surveillance devices, and accessed her private medical or financial information are conclusory, vague, and fanciful and do not lend support to an IIED claim. The allegations that L. Terry, Jordan, and Braithwaite intentionally shared information about hacking into her accounts and told others that she was under criminal investigation and had engaged in occult practices are also vague and conclusory. Even accepting them as true, they are not "so extreme in degree[] as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Haines*, 249 A.3d at 163 (quoting *Batson*, 602 A.2d at 1216). The same is true for the allegation that L. Terry deposited an animal carcass on LaRue's property. While such conduct, if true, is highly offensive,

it is not sufficiently extreme and outrageous to state a claim for IIED. While some of LaRue's allegations, if true, are deeply troubling, liability for an IIED tort "should be imposed sparingly and 'its balm reserved for those wounds that are truly severe and incapable of healing themselves.'" *See id.* (quoting *Figueiredo-Torres*, 584 A.2d at 75). LaRue has not met that standard. Her IIED claim is dismissed.

Next, LaRue's defamation claims. "In order to plead properly a defamation claim under Maryland law, a plaintiff must allege specific facts establishing four elements to the satisfaction of the fact-finder[.]" *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012). These include: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Id.* (quoting *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 448 (Md. 2009)). "[A] 'defamatory statement' is one that tends to expose a person to 'public scorn, hatred, contempt, or ridicule,' which, as a consequence, discourages 'others in the community from having a good opinion of, or associating with, that person.'" *Id.* (quoting *Brodie*, 966 A.2d at 448). "A defamatory statement must also 'refer to some ascertained or ascertainable person, and that person must be the plaintiff.'" *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 269 (4th Cir. 2022); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 757 (D. Md. 2015) ("To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement."); *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 568 (D. Md. 2019) (stating that a plaintiff alleging defamation "must provide more than vague and hazy allegations").

LaRue alleges that L. Terry, Jordan, and Braithwaite falsely told others that she was under criminal investigation and had engaged in occult practices. She does not, however, identify these statements with any specificity. She does not provide the dates the statements were made, to whom

the statements were made, and where the statements were made. The mere possibility that such statements were made is insufficient to state a defamation claim. LaRue also alleges that the defendants made statements online that she "is [a] prostitute, drug dealer, criminally dishonest, sexually inappropriate, financially fraudulent, owes signers money, seals other song writers' music," and is "unfit as a mother and grandmother." ECF 77, ¶ 59. Again, LaRue does not specify what the specific statements were, who made them, when and where they were made, and to whom they were disseminated. Because LaRue has not adequately pled a defamatory statement, her defamation claims are dismissed.

LaRue asserts a fraud claim against L. Terry, Chase, and Braithwaite. Under Maryland law, the elements of a fraud claim are

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Md. Env't Tr. v. Gaynor*, 803 A.2d 512, 516 (Md. 2002) (quoting *VF Corp. v. Wrexham Aviation*, 715 A.2d 188, 193 (Md. 1998)). "Under [Federal Rule of Civil Procedure] 9(b), an allegation of fraud must 'state with particularity the circumstances constituting fraud or mistake,' though 'intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 106 n.9 (4th Cir. 2025) (quoting Fed. R. Civ. P. 9(b)). "To satisfy Rule 9(b)'s heightened pleading standard, a plaintiff must allege facts establishing the 'who, what, when, where, and how' of the claimed fraud." *In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*, 876 F. Supp. 2d 616, 625 (D. Md. 2012) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)).

LaRue does not allege any of the elements of fraud. She does not allege that L. Terry, Chase, and Braithwaite knowingly or recklessly made a false representation to her for the purpose of defrauding her, that she rightfully relied on the misrepresentation, or that she suffered injury because of the misrepresentation. At most, LaRue alleges that L. Terry, Chase, and Braithwaite took out a life insurance policy on her life without her knowledge or consent. ECF 77, ¶¶ 107–12. It may be that these defendants defrauded an insurance company, but LaRue does not allege they defrauded her. Her fraud claim is dismissed.

LaRue asserts a claim for tortious interference with business relations. In Maryland, a claim of tortious interference with prospective business or economic relations has four elements: "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause (which constitutes malice); and (4) actual damage and loss resulting." *Kaser v. Fin. Prot. Mktg., Inc.*, 831 A.2d 49, 53 (Md. 2003) (quoting *Willner v. Silverman*, 71 A. 962, 964 (Md. 1909)). "[I]n the absence of a breach of contract," as here, the plaintiff must plead malicious or wrongful interference. *Id.* (quoting *Nat. Design, Inc. v. Rouse Co.*, 485 A.2d 663, 674 (Md. 1984)). To plead malicious or wrongful conduct, the plaintiff must allege an intentional act that was "independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Id.* (quoting *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 271 (Md. 1994)). Qualifying conduct includes "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits . . . in bad faith." *Alexander & Alexander*, 650 A.2d at 271. The plaintiff must identify the "possible future relationship which is likely to occur, absent the interference,

with specificity." *Mixter v. Farmer*, 81 A.3d 631, 638 (Md. Ct. Spec. App. 2013) (quoting *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 546 (D. Md. 2006)).

The only possible malicious or wrongful conduct that could support a tortious interference claim are the defamation and fraud claims. But LaRue has not pled either of those torts. Because she fails to state a claim for defamation or fraud, she cannot rely on either of them as the malicious or wrongful conduct necessary to state a tortious interference claim. This claim is dismissed.

LaRue alleges a claim for invasion of privacy. To state a claim for invasion of privacy, LaRue must allege that the defendants publicized "a matter concerning [her] private life" and that "the matter publicized is of a kind which (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Furman v. Sheppard*, 744 A.2d 583, 588 (Md. Ct. Spec. App. 2000) (quoting *Klipa v. Board of Educ. of Anne Arundel County*, 460 A.2d 601 (Md. Ct. Spec. App. 1983)). "It is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Id.* (quoting *Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1118 (Md. Ct. Spec. App. 1986)).

LaRue's allegations in support of her invasion of privacy claim are vague and far-fetched. She alleges that "Defendants or persons acting on their behalf placed unauthorized video recording devices in the vents of [her] private residence, including in her bedroom and bathroom, for the purpose of secretly observing and recording her without her knowledge or permission" and that "[t]his footage was sold and viewed by thousands on OnlyFans platform." ECF 77, ¶ 94. She adds that they "allegedly hacked into [her] email accounts, mobile devices, and social media profiles, accessing private messages, images, contacts, and personal information without authorization." *Id.* ¶ 96. And, she alleges that the defendants "obtained a life insurance policy in her name without her knowledge" and then "engaged in continuous surveillance of [her] physical location and

activities and used third parties to track or monitor her movements in person and online." *Id.* ¶¶ 97–

98. These fanciful, vague, and conclusory allegations are not supported by any specific facts. *See,*

*e.g.*, *Glascoe v. Prince George's Cnty.*, No. AW-10-710, 2010 WL 11545965, at *1 (D. Md. Nov.

8, 2010) (noting that, to survive a motion to dismiss, the plaintiff "must present something more

than fanciful conspiracy theories and subjective attacks on the state legal system if she wanted to

set forth cognizable claims"), *aff'd*, 417 F. App'x 296 (4th Cir. 2011); *Jones v. EMC Mortg. Co.*,

No. DKC-06-3038, 2007 WL 4960374, at *1 (D. Md. Feb. 5, 2007) (granting defendants' motions

to dismiss complaint because complaint "lack[ed] not only detail, but clarity, [and] appear[ed] to

rest on faulty premises, and rely on fanciful legal theories" and therefore failed to state a claim;

noting that "other judges . . . have dismissed nearly identical complaints"), *aff'd*, 251 F. App'x 819

(4th Cir. 2007). LaRue's invasion of privacy claim is dismissed.

Next, LaRue asserts a negligence claim. To state a negligence claim under Maryland law,

LaRue must allege: "1) that the defendant was under a duty to protect the plaintiff from injury, 2)

that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that

the loss or injury proximately resulted from the defendant's breach of that duty." *Steamfitters Loc.*

*Union No. 602 v. Erie Ins. Exch.*, 233 A.3d 59, 72 (Md. 2020) (quoting *Rowhouses, Inc. v. Smith*,

133 A.3d 1054, 1066 (Md. 2016)). The Court determines whether a duty exists as a matter of law.

*Id.* "Absent a duty of care, there can be no liability in negligence." *Walpert, Smullian &*

*Blumenthal, P.A. v. Katz*, 762 A.2d 582, 587 (Md. 2000); *see also Stewart*, 859 F. Supp. 2d at 767

(dismissing negligence claim when "it [was] unclear what duty Defendants owed to Plaintiffs").

LaRue's negligence claim fails because she has not alleged that any defendant owed her a duty or

breached that duty. The claim is dismissed.

Finally, LaRue asserts a civil conspiracy claim. "[C]ivil conspiracy 'is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff.'" *Mackey*, 892 A.2d at 494 (quoting *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005)). "Thus, '[n]o action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort.'" *Id.* (alteration in original) (quoting *Alleco Inc. v. Harry & Jeanette Weinberg Found.*, 665 A.2d 1038, 1045 (Md. 1995)). And "an act which, if done by one alone, constitutes no ground of action on the case, cannot be made the ground of such action by alleging it to have been done by and through a conspiracy of several." *Alexander & Alexander*, 650 A.2d at 265 n.8 (quoting *Kimball v. Harman*, 34 Md. 407, 410–11 (1871)).

LaRue rests her civil conspiracy claim on the alleged defamation, IIED, and invasion of privacy. As explained above, LaRue fails to state a cognizable claim for defamation, IIED, or invasion of privacy. Because LaRue has not alleged a cognizable tort, LaRue cannot state a claim for civil conspiracy. Thus, the Court dismisses the civil conspiracy claim against all defendants.

## IV.    Motions to Dismiss Counterclaims

### A.  Defamation claims

Braithwaite, Jordan, L. Terry, and Chase filed counterclaims against LaRue for defamation and defamation per se, alleging LaRue damaged their professional and personal reputations and caused business losses. LaRue has moved to dismiss the counterclaims for failure to state a claim. To evaluate the sufficiency of the counterclaims, the Court considers the elements of defamation under the law of the states where the counter-plaintiffs reside. *See Daniel*, 2023 WL 8478867, at *9.

L. Terry is a Georgia resident. "In Georgia, a claim for defamation has four elements: '(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a

third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm.'" *Oskouei v. Matthews*, 912 S.E.2d 651, 659 (Ga. 2025) (quoting *Am. Civil Liberties Union, Inc. v. Zeh*, 864 S.E.2d 422 (Ga. 2021)). "Defamation per se does not require proof of special damages; rather, damages are inferred." *Zeh*, 864 S.E.2d at 434. Conduct that amounts to defamation per se includes "[i]mputing to another a crime punishable by law" and "[m]aking charges against another in reference to his trade, office, or profession, calculated to injure him therein[.]" *Id.* (quoting OCGA § 51-5-4 (a) (1) & (3)).

Jordan, Braithwaite, and Chase reside in Texas, Nevada, and Arkansas, respectively. In those states, the defamation elements are similar. In Texas, they are: "(1) 'the defendant published a false statement'; (2) 'that defamed the plaintiff'; (3) 'with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual)'; and (4) 'damages, unless the statement constitutes defamation per se.'" *Terrell v. Mazaheri*, 676 S.W.3d 116, 127 (Tex. App. 2023) (quoting *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017)). "'Defamation per se refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed.' . . . [A]ccusing someone of a crime is defamatory per se." *Id.* at 131 (quoting *In re Lipsky*, 460 S.W.3d 579, 596 (Tex. 2015)). In Nevada, "[a]n action for defamation requires the plaintiff to prove four elements: '(1) a false and defamatory statement . . . ; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.'" *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009) (quoting *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005)). "[I]f the defamatory communication imputes a 'person's lack of fitness for trade, business, or profession,' tends to injure the plaintiff in his or her business, it is deemed defamation per se and damages are presumed." *Id.* (quoting *K–Mart Corp. v. Washington*, 866

P.2d 274, 282 (Nev. 1993)). And in Arkansas, the elements of defamation are: "(1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages." *Boellner v. Clinical Study Centers, LLC*, 378 S.W.3d 745, 757 (Ark. 2011). "[A]ctual damage is an element of defamation, and Arkansas no longer recognizes the doctrine of defamation per se, which, under the common law, presumed damages to reputation." *Webster v. Webster*, 689 S.W.3d 133, 137 (Ark. App. 2024) (citing *Faulkner v. Arkansas Children's Hospital*, 69 S.W.3d 393 (Ark. 2002)).

Jordan alleges that, on Instagram on or about January 29, 2025, LaRue made false and defamatory statements about Jordan, "(1) accusing her of crimes and attempted crimes, such as murder, (2) . . . indicating that she was a witch, (3) alleging that Jordan engaged in scam relating to PPP loans, and (4) contending that Jordan sells drugs." ECF 72, ¶ 15. Jordan asserts that "LaRue has over 340,000 followers on Instagram." *Id.* ¶ 11; ECF 72-6, at 2. Jordan attached screenshot of January 29 posts in which LaRue stated "Claudia, Laronda & Dr Marguerite paid for attempts on [LaRue's] life & daughter for financial gain" and that "[t]here are no limits these 3 clowns wouldn't go to unalive [LaRue] and [her] child for kendal Dismute & financial gain. They paid practitioners thousands of dollars to use the blood of innocent puppies, birds or rabbits for rituals against [LaRue's] life." ECF 72-1, at 2.[3] LaRue also stated that "[a]ll 3 women have bodies on their hands" and that they "attempted murder on [LaRue] and [her] child as well as conspiring to take [their] lives @paying hitmen." *Id.* In a separate January 29 post, she stated that "Laronda

---

[3] Jordan alleges that Jordan dated a man named Kendall Dismuke after Dismuke had a relationship with LaRue's daughter. ECF 72, ¶¶ 7–8. Braithwaite alleges that Braithwaite dated Dismuke before Dismuke dated LaRue's daughter. ECF 73, ¶¶ 7–8. It appears that "Kendal Dismute," ECF 72-1, at 2, and "Kendall Dismuke," ECF 72, ¶¶ 7–8; ECF 73, ¶¶ 7–8, are the same person.

Dison Terry and Claudia Jordan put in a false report filed with the FEDS." ECF 72-2, at 2. In yet another January 29 post, she stated that "Claudia Jordan is a gambler that uses her money to invest in drugs to make a profit." ECF 72-5, at 2.

Braithwaite makes similar allegations. She states that on YouTube and Instagram, on or about January 2025, LaRue made false and defamatory statements about Braithwaite, "including (1) accusing her of crimes and attempt crimes, such as murder, (2) . . . indicating that she was a witch, (3) accusing her of stealing LaRue's personal information and (4) [accusing her of] engaging in nefarious activity." ECF 73, ¶ 15. Then, on February 8, 2025, LaRue posted that "Doctor Marguerite D Braithwaite paid spiritual practitioners in the occult to unalive my daughter," *id.* ¶ 16, and on February 25, 2025, LaRue posted that Braithwaite "violated Hipaa & paid dark spiritual magician to attack [her]," *id.* ¶ 17. Braithwaite alleges that "LaRue has over 340,000 followers on Instagram." *Id.* ¶ 21.

L. Terry and Chase allege defamation in two fora. First, they allege that, in this lawsuit, LaRue accuses them "of serious criminal acts, including attempted murder." ECF 74, ¶ 5; ECF 75, ¶ 5 (same). Second, they allege that LaRue made harmful statements on YouTube and Instagram, "falsely accus[ing] [them] of attempting to harm her, committing witchcraft, slandering her, and engaging in criminal conduct." ECF 74, ¶ 6; ECF 75, ¶ 6 (same). L. Terry attaches screenshots of a description of a podcast. ECF 74, at 1. The description states:

> Live podcast interview with Regina LaRue. She reveals how Laronda Dison Terry aka Ronnie Terry the wife of legendary singer Tony Terry and her family have murdered thousands of citizens . . . . Ronnie and her mother Diann Chase bribed a police officer, a judge, a hacker and insurance agent. Laronda Dison Terry committed a RICO crime which includes: Placing life insurance on victims without their knowledge and then doing black magic to unalive them. Spreading an incurable STD, paying spiritual assassins Worldwide to kill Regina and her family. Laronda committed attempted murder, bribed the IRS to harass and scam Regina. Laronda Dison Terry . . . hacked Regina LaRue['s] cell phone, computer and email.

> She also placed a video camera in the vent of Regina's bathroom and bedroom to
> make money off of the footage.

*Id.* Chase attaches screenshots of LaRue's Instagram posts stating "Diann Chase involvement in child trafficking" and "CIA and IRS trusted Diann Chase but the entire time she was doing black magic and root work over the USA justice system." ECF 75-1, at 1.

All four counterclaimants state claims for defamation. They allege that LaRue posted publicly on Instagram that they committed crimes, that these statements were false and damaging to their reputations, and that LaRue knew the statements were false. The statements that they committed crimes are defamation per se in Texas, Georgia, and Nevada. Although Arkansas does not recognize defamation per se, Chase alleges that LaRue's defamatory statements damaged her reputation and caused her to lose business. L. Terry and Chase cannot, however, state a defamation claim based on LaRue's allegations in this lawsuit. *See Oskouei*, 912 S.E.2d at 659 ("Absolutely privileged communications, such as allegations contained in pleadings filed in court, cannot form the basis for a defamation action [under Georgia law]."); *Jones v. Com. Printing Co.*, 463 S.W.2d 92, 95 (Ark. 1971) ("[T]hose who partake in judicial proceedings enjoy an absolute immunity from suit for defamation . . . ."). Insofar as L. Terry's and Chase's claims are based on statements in LaRue's filings in this case, LaRue's motions to dismiss their counterclaims for defamation are granted. The motions to dismiss the counterclaims for defamation otherwise are denied.

### B.  IIED counterclaims

L. Terry (a Georgia resident) and Chase (an Arkansas resident) also sue LaRue for IIED. The elements of IIED are similar in Arkansas and Georgia. In Arkansas, to state a claim for IIED, a claimant must allege

> (1) that the actor intended to inflict emotional distress or wilfully and wantonly
> knew or should have known that emotional distress was the likely result of his
> conduct; (2) that the conduct was extreme and outrageous, was beyond all possible
> bounds of decency, and was utterly intolerable in a civilized community; (3) that

the actions of the defendant were the cause of her distress; and (4) that the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Croom v. Younts*, 913 S.W.2d 283, 286 (Ark. 1996) (quoting *Hunt v. Riley*, 909 S.W.2d 329, 332 (Ark. 1995)). In Georgia, the elements are: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe." *Cottrell v. Smith*, 788 S.E.2d 772, 780 (Ga. 2016) (quoting *Northside Hosp. v. Ruotanen*, 541 S.E.2d 66, 68–69 (Ga. App. 2000)).

L. Terry and Chase fail to state claims for IIED. They claim that "LaRue's conduct was extreme, outrageous, and beyond the bounds of decency" and that, "[a]s a direct and proximate result of LaRue's actions," they each "suffered severe emotional distress requiring ongoing care and intervention." ECF 74, ¶¶ 15–16; *see* ECF 75, ¶¶ 13, 16. These vague and conclusory allegations are insufficient to state an IIED claim under Georgia or Arkansas law. They are dismissed without prejudice.

## V.    Claims against A. Terry and Gangaiah

The two remaining defendants are A. Terry and Gangaiah. LaRue asserts the same torts against them as she did the others. ECF 77, ¶¶ 34–126. The Court dismisses these claims *sua sponte*.

"[T]here are instances in which 'sua sponte dismissals of complaints under Rule 12(b)(6) are appropriate.'" *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (affirming *sua sponte* dismissal of claim in fee paid case) (quoting *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002) (italics supplied) (internal ellipsis omitted)). For example, "[e]ven if a party does not make a formal motion under Rule 12(b)(6), the district court judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim . . . ."

*Id.* at 291 (quoting 5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1357 (3d ed. Oct. 2020 update)). District court may dismiss "inadequate complaints" *sua sponte* if "the party whose complaint stands to be dismissed [is] 'afforded notice and an opportunity to amend the complaint or otherwise respond.'" *Id.* (quoting *Chute*, 281 F.3d at 319).

Here, the Court dismissed LaRue's amended complaint for failure to state a claim and gave her "the opportunity to identify the actions of each defendant that could lead to their liability." ECF 49, at 5; ECF 50. This put LaRue on notice that her claims, as stated in her amended complaint, were subject to dismissal. In response, LaRue filed a second amended complaint. LaRue still fails to state a claim for civil conspiracy, IIED, defamation, tortious interference with business relations, invasion of privacy, or negligence against L. Terry, Chase, or Braithwaite. She makes only one allegation against A. Terry and Gangaiah that is unique to them. She alleges that A. Terry "published defamatory and disparaging content about [her] on his publicly accessible social media accounts, which were widely viewed by industry professionals, fans, and potential collaborators." ECF 77, ¶ 79. This vague allegation about A. Terry does not alter the Court's analysis of, or conclusions about, the insufficiently pled claims. As to Gangaiah, LaRue alleges that, "[o]n December 2, 2024, Defendant Gangaiah texted [her] a doctored photo of her grandson with a simulated bullet wound. He warned, "Next time I won't need Photoshop." *Id.* ¶ 27. Despite the specificity and seriousness of this allegation, LaRue still does not state a claim for IIED, defamation, tortious interference, invasion of privacy, or negligence against Gangaiah.[4] The Court dismisses LaRue's claims against A. Terry and Gangaiah *sua sponte* for failure to state a claim.

---

[4] LaRue filed her second amended complaint on May 9, 2025, but she has not filed proof of service of this complaint as to A. Terry or Gangaiah.

### VI.    Motion for a Temporary Restraining Order and/or Preliminary Injunction

LaRue filed a verified motion for a TRO and/or preliminary injunction "enjoining the Defendants from directly or indirectly harassing, stalking, threatening, or otherwise engaging in or paying for any acts of spiritual warfare, surveillance, or psychological attacks against Ms. LaRue or any member of her family, and from coming within 300 feet of Ms. LaRue or her residence . . . ." ECF 120, at 1.

Preliminary injunctions and TROs, which differ only in duration and the notice required, *see* Fed. R. Civ. P. 65, serve "'to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit' so as 'to preserve the court's ability to render a meaningful judgment on the merits.'" *Erie Ins. Exch. v. Md. Ins. Admin.*, 105 F.4th 145, 148 (4th Cir. 2024) (quoting *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quotation marks removed)). They "are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal quotation omitted).

To obtain a preliminary injunction or a TRO, LaRue must establish four factors: (1) that she is likely to succeed on the merits; (2) that she is likely to suffer irreparable harm if the Court denies preliminary relief; (3) that the balance of equities favors her; and (4) that an injunction is in the public interest. *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 543 (4th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). LaRue must establish all four factors. *Id.*

LaRue's motion fails at the first factor: She has not established a likelihood of success on the merits. Her claims against Porter, Montrell Dison, Merrick Dison, Chase, and Talley have been

dismissed for lack of personal jurisdiction. Her claims against L. Terry, Jordan, Braithwaite, A. Terry, and Gangaiah have been dismissed for failure to state a claim.

Even if LaRue had stated a claim against a defendant, her request for injunctive relief would be denied. She is "not asking the Court to maintain the status quo until after a trial and final judgment, which is the traditional function of a preliminary injunction. Rather, [LaRue] seek[s] an order altering the status quo before the case even begins, what [the Fourth Circuit] ha[s] called a 'mandatory' injunction." *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 209 (4th Cir. 2024) (quoting *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014)) (internal citation omitted). This is "a particularly aggressive form of preliminary injunction, one that is 'disfavored' in 'any circumstance.'" *Id.* (quoting *League of Women Voters*, 769 F.3d at 235). "[O]nly the most extraordinary circumstances" warrant a mandatory preliminary injunction. *Id.* (quoting *Taylor*, 34 F.3d at 270 n.2). LaRue certainly has not shown the extraordinary circumstances necessary for a mandatory preliminary injunction.

LaRue's motion for a TRO and/or a preliminary injunction is denied.

**VII.    Conclusion**

Talley's, Chase's, Porter's, Merrick Dison's, and Montrell Dison's motions to dismiss for lack of personal jurisdiction are granted. L. Terry's and Jordan and Braithwaite's motions to dismiss for failure to state a claim are granted. The claims against A. Terry and Gangaiah are dismissed *sua sponte*. L. Terry's and Chase's counterclaims are dismissed in part, consistent with this memorandum opinion. Remaining are Jordan's and Braithwaite's defamation counterclaims and L. Terry's and Chase's defamation counterclaims that are not based on statements made as a

part of this litigation. LaRue's motion for a TRO and/or preliminary injunction is denied. LaRue's answers to the defamation counterclaims are due January 12, 2026.

     A separate order shall issue.


December 22, 2025
Date

Deborah L. Boardman
United States District Judge